The opinion of the court-was delivered by
Smith, J.
George Uhland, the defendant in error, who was the plaintiff below, brought an action of assumpsit against John Uhland, the plaintiff in error, in the Court of Common Pleas of Lebanon county, under the statement law, as it is called, of 1806, to recover one hundred pounds, with interest theréon from the 26th o£ May, 1810. On the trial of the cause, the circumstances which gave rise to the suit appeared from the evidence to be the following;—
On the 24th of October, 1795, a certain Martin Light, of the county of Dauphin, conveyed to George Uhland, the father of the parties in this suit, and to Maria his wife, (a daughter of the said Martin Light,) “and to the survivor of them, and after their decease to the heirs of the body of the said Maria -by the said George Uhland, and to their heirs and assigns,” two hundred acres of land, in Hanover township, in the county of Dauphin, (now Lebanon,) for and in .consideration of one thousand pounds. After the-delivery of this deed, George Uhland, one of the grantees died, probably about the year 1800, leaving his wife Maria j and issue six children, one of whom, a daughter, had been married to Henry Hershberger, but had also died leaving three children, who stood in the place of their deceased mother, Finn Hershberger. At the time George Uhland died, his estate was indebted to the estate of Martin Light, deceased, in ’the sum of three hundred pounds, a debt due from him to his father-in-law j Martin Light, for the land, mentioned in the deed of 1795. About the year 1810, the executors. of Martin Light were pressing the estate of George Uhland, *266 for the payment of this debt, in consequence of which the widow, Maria Uhland, proposed that John Uhland, her son, should purchase one hundred acres of the land mentioned in the deed of 1795, for nine hundred pounds. To this- proposal, John and the .other heirs, then of age, assented; and on the 26th of May, 1810, a deed for the one-hundred acres, by metes and bounds, was accordingly made by Maria Uhland, the widow, and by three heirs of George Uhland, deceased, to John Uhland, the plaintiff in error. George Uhland was at this time a minor, and no one had been appointed to take care of him or his estate. In this last mentioned deed of 1810, it is recited, that “ whereas George Uhland the elder was then dead, and the said Maria Uhland, his widow, desirous and willing to give up unto her son, John Uhland, part of the premises, conveyed to her for life by her father, Martin Light, by deed of the 24th of October, 1795, and had mutually agreed so, and had surveyed off the said one hundred acres by metes and bounds, and for which one hundred'acres the sard John Uhland had agreed to pay nine hundred poünds, in the following manner: — three hundred pounds thereof to the executors of Martin Light, it being a debt d.ue to the said Martin Light by George Uhland, in his lifetime; one hundred pounds to be retained by the said John Uhland for his share in the said one hundred acres: and,.further, to pay to each of his brothers and sisters, or their legal representatives, one hundred pounds each; and that the remaining two hundred pounds the said John Uhland, should retain in his hands for the use of his brother George Uhland, then a minor, and for the children of his deceased sister Jinn, who had been intermarried with Henry Hershberger.” The deed then proceeds in the usual form; and states the one hundred acres conveyed, “to-he subject, nevertheless, to the payment of the said three hundred pounds due and payable to the executors of Martin'Light, deceased, and also' subject to the claims of the said George Uhland, who is yet a minor, and the minor children of the said Jinn Hershberger, deceased,’.’ concluding with the usual.covenants and a special warranty. The two hundred acres had been, since the death of old George Uhland, to this time, in the possession of Maria Uhland. John Uhland accepted this deed, took 'possession of the one hundred acres, used and enjoyed them, sold live acres thereof to a certain Philip Seltzer for two hundred pounds, and cleared part of the land, and for the wood sold from one acre received forty-five dollars. It was also proved, that at , this time, it was .understood between the parties to the deed, that George Uhland might or might not take the one hundred pounds when he should become, of age.' George Uhland became of age in May, 1819; and on the 13th of November, 1823, tendered a deed, dated the 8th of November, 1823, duly executed, to John Uhland for- his part of the one hundred acres, and then demanded the payment of the said one hundred pounds, and of the interest thereon from the 26th of May, 1810; which, deed was not *267 accepted by John Uhland, nor the money paid to George Uhland,. John Uhland had paid, before this time, to the other heirs, and to the three children of-his deceased sister, Jinn Hershberger, their one hundred pounds, respectively. Upon the trial a verdict was rendered for the plaintiff, for four hundred and eighty-four dollars and ninéty-six cents, and judgment thereon, on the 11th of November, 1825. Various propositions were presented by the defendant for the answers of the court, which need not be all mentioned now, inasmuch as some of them were answered favourably (or him. In one of them the court was requested to charge, the jury, that the deed of the 26th of May, 1810, from Maria Uhland and the three heirs to John Uhland, the release of the 8th of November, 1823, from George to John Uhland, and the parol testimony given in the cause, formed no contract on which an action of assumpsit could be supported: and that if any contract could arise under the deed of the 26th of May, 1810, the proper action would be either debt or covenant, and not assumpsit. The answer of the court to this proposition was, “ That in the deed of May, 1810, there was an agreement by the contracting parties to that deed, that one hundred pounds should be retained by John Uhland for George Uh-land, then a minor, and that parol evidence had been given, that it was the understanding of the contracting parties at the time of the execution of .the deed, that the one hundred pounds should be paid by John Uhland to his brother George Uhland after he should become of age, if George would then agree to accept it for his share in the estate. And that this was a sufficient foundation for an action of indebitatus assumpsit by George Uhland on that contract or agreement, provided he had not abandoned his right to sue by neglecting for an unreasonable time to tender a conveyance of his right to the land, to John, and making a demand of the money.” The court further stated, “ that under the deed John Uhland took possession of the one hundred acres, which he .retains ever since, cut down' part of the timber, sold it, and had sold five acres of the timber-land, and that his vendee paid him two hundred pounds for the same, and cut off the timber, and that this was a sufficient consideration in law' for George to support this action, provided, as already stated, he had not. abandoned his right to demand the one hundred pounds from John, which he had agreed to retain for his use, when he received the conveyance from the widow and the other parties to the deed.” This is assigned as error, and it is con-tended that the facts proved in this case were not a sufficient consideration in law to entitle the plaintiff, George Uhland, to recover. I cannot discover any error in the. answer of the court .to this proposition. The consideration for the promise made by John in the d.eed was sufficient; he received for it a title from his mother of her right to the one hundred acres; he received the title of the three heirs, who were then of age; he obtained the possession of the one hundred acres, as well of the part belonging to George as of that *268 part belonging to.the other heirs; he occupied and used the land, cleared a'part, sold a part for a high price, and to this day exercises every possible act of ownership, undisturbed over the same; he has paid all the other’heirs: in-short* he and all the parties lived, and do live up to the agreement, except that he refuses tó pay George his one hundred’pounds. It appears that the mother is living, and of course, if it tvere not for this deed, in which he had made the promise to pay George the one hundred pounds, he could not now have-the absolute possession of the land, since his mother would have a life estate in the whole tract, of which these one hundred acres are a part Shall it then be said, there was no consideration for this promise? There wTas.a consideration, and such a one as may-well support this action. George Uhland could not, as it is contended, bring an action of debt or of covenant against John Uh~ . land on tbis deed, for this plain reason, that he was no party to it. When a deed is made inter partes, that is, between A; of the first part, and B. of the second part, C. a stranger, cannot sue on a covenant therein,- though made for his.benefit; but where it is not made inter partes he- may sue. So where a bond was made to A. for the benefit of B., it was held B. could neither sue upon- it,- nor release it, he not being a party to it. 1 Lev. ,235. And whatever diversity of opinion and decisions there may be among the older cases, in respect to the right of a third person to sue upon a promise made to another for his benefit, it seems to be now settled, and is so laid down by Justice Buller, “that if one person makes a promise to another for the benefit of a third, that third- may maintain an action upon it.” So in this case, under all the circumstances, George Uhland might well sustain this action against his brother on the promise made to his .mother for his benefit; and especially in this state, under the statement law, under which lie has proceeded. There is then no error in- the answer of the court to this’point: It is not necessary to consider the third and fifth errors assigned.
The court was also requested to charge the jury, that if George Uhland considered himself entitled to the one hundred pounds from John, he was hound to convey his interest to him, when he arrived at full age, and that-his not tendering a deed to John for four years and six months after he was of age, rescinded the contract; “ that the interest, of George Uhland in the land did not pass by the'deed of Map, 1810; and, that before he would be entitled to demand the one hundred pounds from John Uhland, be would be required by law to tender to John a conveyance of his title in a reasonable time after he arrived at full age;,and that his delaying to tender a deed to John Uhland for upwards of four years and six months after he become of age, was an unreasonable time, and would bar his recovery of the money,' unless satisfactorily accounted for and explained.” I cannot see on what ground the defendant has a right to complain of this answer as erroneous. The answer, under the circumstances of this case, was as favourable to the defendant *269 as he could have desired it to be. It does not appear, that when the deed was tendered to John, and the money demanded on the 13th of November, 1823, that he made any objection on account of the delay in tendering the title; he did not say it was too late, nor did he refuse to accept the deed or to pay the money for any such reason, nor does it appear that he ever demanded a conveyance from his-brother George, or desired him to malte his election; for George Uhland, being an infant'at the time the promise was made by John, had a right to elect, after he had arrived at twenty-one years of age, either to have his money or his share of the land: — he did elect, .he demanded his money, and as John had pa'id the .other heirs, why should he.not pay George? Equity, conscience, reason, and justice, all say he ought to be paid. These brothers lived near each other, — no doubt saw each other often, and as John had paid the threé hundred pounds to Light’s executors, had paid each of his sisters their respective Share,s, and to the children of his sister Jinn their one hundred pounds, it was reasonable for George to expect that his brother John would eventually do justice to .him and pay him accoi’ding to his promise. This may have been an inducement to delay the tender of the deed; but be that as it may, the answer of the court was fairly and legally placed before the jury, and the defendant cannot complain, for I repeat, it was-as favourable to him as it ought to have been.
As-to the errors assigned in regard to the title.of George Uhland, that he was bound to tender a deed conveying his right in the estate, with a general warranty, this court is of the opinion, that by the deed of 1795, a good and sufficient title in fee vested in George Uhland, and that he having tendered to John a deed, in which he conveyed all his right in the one hundred acres, he complied with all the law required of him in such a cáse, and that it was not incumbent on him to tender a deed, containing a general warranty. Indeed, it does not appear, that John 'Uhland ever demanded such a deed from his sisters, or any of the other children or their representatives, nor even from George himself; nor did he stipulate for a deed, with a general wárranty, at the time the. agreement was entered into.
After the court had charged the jury on all points on which they had been requested'to do so by the defendant, the counsel for the defendant requested the, court to instruct him as to.the time from which interest ought to be charged; to which request, the court answered, that in this case, that was a matter for the consideration of the jury and it was for them to fix the time: this answer is the last error assigned.
The law is well established, that one who receives money of another, and holds it against his consent, shall pay interest; and, where one retains money of another unlawfully and against his consent, or after demand, interest shall be allowed. There- may.be cases, in which one ought to pay the principal only; and there may be cases *270 in which one ought, ex equo et bono', to pay the principal with interest. A simple calculation will show, that the jury did not give interest from the 26th of November, 1810, (the time of entering into the agreement,) to the 18th of November, 1825, (the time of trial,) for if they had, the verdict must have been for more; sb that the defendant has no reason to complain on this account: but, when it is considered, that John XJhland quietly took possession of the one hundred acres in May, 1810, and holds the undisturbed possession thereof since, used and enjoyed and received the profits of the lands, that .he lost no opportunity of making an advantageous sale thereof, and that there was no evidence of'his having kept the money lying dead for one moment, or ever had' made a tender of it to George or to any one for him, I cannot see on what reasonable ground he can ask an exemption from the payment of interest; indeed the defendant indirectly admits, he ought to pay interest: all he complains of is, that it ought not to have been left to the jury to say from what period it should commence. But as the defendant delayed the payment of one hundred pounds improperly, and therefore is chargeable with interest, and as'there are, in this cáse, peculiar circumstances, the matter of interest was properly left to the jury. In a case too, circumstanced like the present, where the defendant did hot offer to pay the money, but actually refused to pay it, when demanded, I think, a court would be justified in leaving it to the jury to say, what sum should be paid by way of interest, and from what time it should commence. I am of the opinion, that the interest here depends on considerations of justice and-equity arising out of the peculiar circumstances disclosed at the- trial, and that it was for the discretion of the jury to determine from what time interest should be recovered. The court then, on this part of the case, also charged correctly. Upon the whole, I am of opinion, that the judgment of the Court of Common Pleas should be affirmed.
Gibson, .C. J.
Whether this be considered as an action at law for purchase money ór a bill for specific performance, the principles by which the rights of the parties are to be determined, are necessarily the same. In an action for purchase money, even a court of law will take cognisance of equitable objections, (Sugd. Vend. 1st Am. edit. 160,) and d fortiori we will do so here, where there is no separate court of equity in which a purchaser may .find protection. The question then is, whether equity would decree this contract specifically.
It seems to be no objection that the agreement is unequal; or founded in-mistake, or on a consideration remote. But it is essential that it b.e mutual, and afford reciprocal remedies. Were it not for this familiar elementary principle, a party would be in the predicament of heing held to the bargain where it should be prejudicial to him, without- the correlative, right of enforcing it where *271 beneficial. That both shall be bound, is a tacit condition of every agreement; for the law presumes what is true in fact, that no one would do ah act of such consummate folly as to bind himself in every event, while the other party should be at liberty to abide by the bargain or not, at his option; and the mutual mistake of the parties on this head, as on any other, furnishes, either, with an unanswerable argument for rescinding the contract. ' In this respect, as in every other, equality is equity. It seems, however, to be sufficient if this mutuality of contract and reciprocity of remedy exist when the agreement is made. Stapelton v. Stapelton, (1 Atk, 10.) But if it do not exist then, it is not easy to see how, without a new consideration, it can acquire an.existence afterwards. To the rule, asT have stated it, there are but two exceptions: the, first founded on the statute of frauds, which requires the agreement to be signed only by the party to be charged; and hence it has been thought, although not universally, that the one party may be charged even though the other cannot: and the second, occurring where the agreement could not be obligatory on the party enforcing it, in consequence of fraud in the concoction of it by the party sought to be charged, who would profit by his own wrong were he permitted to elude the contract by setting up a want of mutuality occasioned by his own knavery. (Newl. on Cont. 152, 157.) It is not pretended that the case is within either of these exceptions; .and how does it stand under the rule ? A mother, having an estate for life, with remainder in fee to her two sons, three married daughters, and three grandchildren, the issue of a deceased daughter, joins with the'daughters and their husbands in a conveyance in fee to one of the sons, (John,) for the consideration of nine hundred pounds, to be paid thus: three hundred .pounds to the person from whom the family acquired the estate, being part of .the purchase money; one hundred pounds to each of the daughters: one hundred pounds to be retained by the grantee for his own share; and the remaining two hundred pounds, also, to be retained, as it is expressed in the conveyance, u for the use of his brother George,” (the plaintiff below,) “ who is yet a minor, andjhe children of his sister Anne:” Habendum “ subject to the claims of the said George TJhland and the minor ehildi-en of the said AnneA This is an exact statement of the'case; from which it is apparent, the mother surrendered her life estate for the equal benefit of her offspring; and that the daughters with their husbands, as far as they could effect it, vested the title to the whole .in John, receiving for their interest an equivalent in money. But they could not, and it is evident did not mean to, contract for those who were not, and from their infancy could not be, parties. The two hundred pounds were to be retained for George and the children of Anne, not absolutely, but in the event of their acceding to the family arrangement as soon as they, should have capacity to do so. But the mother and sisters did not pretend to reserve for, them a right of accession: that was necessarily to be sub *272 jgc'c to future arrangement. But what if John should object? The mother would in that event be entitled to resume that part of the life estate which she had surrendered for the benefit 'of George or the children of .Anne with a view to the contingency of their becoming parties; for the fraudulent refusal of John to complete the arrangement in any particular part, would induce a chancellor to declare him a trustee pro tanto. But between John and George there was no contract', unless the mother may be supposed to have represented George; and even that would be unavailing, for it will be conceded that she could not have bound, him. In Armiger v. Clarke, (Bunb. 111,) we have the very case. A. father, tenant for life, articled for the sale of the fee at thirty years’ value, and'received five hundred pounds, which, it appeared by a memorandum on the articles, was to be repaid if the father did not make out a title by a day certain. . On a bill to enforce the articles by the son, •it appeared in the proofs that the father could not make out a title, the land , being in settlement on his wife; the bill was dismissed mainly, because the son would not have been concluded by his father’s covenant, and the remedy therefm'e was not mutual. Here then was a sale by a parent for himself and his child, which was held not to bind the purchaser because it did not bind the child. This is precisely our case, except it does not appear that, the child was an' infant; and I admit that, in modern times, a doubt has been started whether in respect of contracts directly with the infant, that does not make a-difference. But the rule seems to stand clear even of this as an exception. The point was decided in the house •of lords as-early as 1710, in Conway v. Shrimpton, where it was determined expressly that an agreement with an infant is not binding because ex parte, (Rudiments of Law and Equity, 19, pl. 13:) from which Lord Harcourt concluded that such an agreement is bad on both sides. (1 Mad. Ch. 423, note m.) The doubt, however, has been only in respect of'agreements directly with the infant, which being only voidable, admit of confirmation on coming of age. But here, as in Armiger v.- Clarke, there was no agreement with the infant or any one ip his stead, an attempt by the mother and sisters to bind him, if such there had been, being simply •void, and incapable of confirmation without a new consideration, There is therefore no covenant on which George can maintain an action in any form. The principle of Dutton v. Poole, (2 Lev. 310,) that an action may be maintained by the person beneficially interested in a promise made to another, has obtained only where the promise was on a consideration executed. And it has been expressly held to be inapplicable to covenants under seal. Gilby v. Copley, (3 Lev. 139.) In Salter v. Kingly, [Carth. 77,) Lord Hale held that a party to a deed could not covenant with another who was not a party: and in Offley v. Ward, (1 Lev. 235,) where a bond Was made to A. for the use of B., it was adjudged that B. could neither sue on it nor release it. He could doubtless sue on it in the *273 name of the obligee, and his release would be good in equity. But In a suit against John in the name of the mother and sisters, want .of mutuality would still be an obstacle. John was to retain one hundred pounds for the use of George, when George should convey. But there was no covenant by the mother and sisters that he over should convey; consequently, there could be no remedy against them or any one else.
Nor do I think the possession taken by John under the conveyance, can give George an equity. Piad he entered on George’s estate, it might have been otherwise. But he had not acquired the whole remainder, and consequently the mother’s life estate did not merge in it. So that no part of the remainder, not even his own share, took effect in possession. He therefore necessarily entered ■on the life estate which, even yet, is unexpired; ánd, so far was he from assuming the ownership of George’s estate, that he disclaimed it by accepting a conveyance in which it was expressly reserved. Thus, the possession was perfectly consistent with the estate of George.
The case, then, falls within the rule which "stands in the way of specific performance, where the remedy is not mutual. A bill for specific performance is an application to the discretion of the court, (Sugd. on Vend. 1st Am. edit. 147:) and it is for this reason a chancellor withholds his extraordinary powers wherever a party claim's the unjust advantage of being bound or loose, as his interest may dictate. As, therefore, an action for purchase money is in our courts emphatically a bill in equity, it seems the court below erred in saying that the action might be maintained on the facts given in evidence.
Judgment affirmed.